ENTERED ON DOC
MC 10-12-05
D.DA

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| TECTONIC NETWORK, INC., f/k/a | : | CASE NOS. 05-78966 and 05-79855 |
| RETURN ON INVESTMENT CORP., | : | Jointly Administered |
| f/k/a NET TECH INTERNATIONAL, | : | |
| INC., and TETONIC SOLUTIONS, INC. | : | JUDGE MASSEY |
| | : | |
| Debtors. | : | |

---

| | | |
|---|---|---|
| TECTONIC NETWORK, INC., and | : | |
| TECTONIC SOLUTIONS, INC. | : | |
| | : | |
| Movants, | : | |
| | : | CONTESTED MATTER |
| v. | : | |
| | : | |
| LAURUS MASTER FUND, LTD., | : | |
| | : | |
| Respondent. | : | |

INTERIM ORDER (1) AUTHORIZING DEBTORS-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING, GRANT SECURITY INTERESTS AND LIENS AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d); (2) AFFORDING ADEQUATE PROTECTION; AND (3) MODIFYING AUTOMATIC STAY

Upon the emergency motion, as amended, (the "Motion") of Tectonic Network, Inc. ("Network") and Tectonic Solutions, Inc. ("Solutions") , as debtors and debtors-in-possession herein (when used collectively, "Debtors" or "Seller"), seeking an order (1) authorizing Debtors to obtain post-petition financing from Boston Equities Corporation or its designee ("Lender"), and grant security interests and liens and superpriority status pursuant to sections 361, 364(c) and 364(d) of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (2)

ATL\64954.2

affording adequate protection to Lender; and (3) modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to carry out all relevant obligations; and based upon the Court's review of the Motion and all matters brought to the Court's attention at the hearing held on October 12, 2005 (the "Interim Hearing"), the Court makes the following findings of fact and conclusions of law (and to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*);

IT IS HEREBY FOUND AND DETERMINED THAT:

A.   This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.   Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.   Determination of the Motion is a core proceeding under 28 U.S.C. §§ 157 (b) (2) (A), (D), and (M). The statutory predicates for the relief requested herein are sections 105, 361, 362, and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* as amended (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001.

D.   Network has represented to Lender that it believes that all of the assets of its subsidiary, Solutions, were transferred to Network in February 2005 and that there are no remaining assets of Solutions. Nevertheless, both Debtors are parties to an Asset Purchase Agreement, as amended (the "APA"), with Buyer, which contemplates the sale of the Debtors' assets collectively (to the extent Solutions has any assets), if the Post-Petition Financing is approved. For purposes of this Motion seeking the Post-Petition Financing, both Debtors have

so moved, but only Network is operating a business, and only Network is a party to the DIP Loan Agreement. As such, this Order refers to "Debtor" in the singular to mean Network, but to the extent Solutions has any assets, this Order is to be read to apply to both Debtors.

E. The Budget attached hereto as Exhibit "A (the "Budget") was prepared by Debtor and enumerates in detail on a weekly basis Debtor's anticipated receivables and expenses from the Petition Date through and including October 28, 2005. Originally, the Motion attached a different Budget extending through December 31, 2005. The Budget attached to this Order is the controlling Budget, and Debtors are only authorized to seek financing in the amounts and time frame set forth in the attached Budget.

F. Debtor requires financing to continue the operation of its business as a debtor-in-possession under chapter 11 of the Bankruptcy Code and to minimize the disruption of its business as a "going concern." Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code, and Debtor is unable to obtain financing in the form of a credit facility secured by liens that are junior to existing liens on property of its estate pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code. Debtor can obtain financing in the amounts required by it only by the grant of liens, including priming liens pursuant to section 364(d) of the Bankruptcy Code, as hereinafter described, but Debtor is unable to procure any such financing from any source other than Lender.

G. Debtor has requested that Lender extend a secured loan up to $130,000, or up to the amount secured by priming liens, whichever is less, to Debtor (the "Loan").

H.  The Lender is willing to extend the Loan upon the terms and conditions set forth herein and in that certain Senior Secured Super-Priority Debtor-in-Possession Loan and Security Agreement to be entered into by the Debtor and the Lender (together with all schedules, exhibits and annexes thereto, and as at any time amended or restated, the "DIP Loan Agreement"). Specifically, Lender agrees to make a loan (the "Loan") to Debtor in an amount of up to $130,000 (i) on the date this Order is entered or October 15, 2005, whichever is later.

I.  All capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Loan Agreement.

J.  A condition to the willingness of the Lender to extend credit is that, as security for the prompt payment of the Loan, all interest, fees, expenses and other charges at any time payable by Debtor under the DIP Loan Agreement (collectively, the "Post-Petition Financing"), the Lender shall receive a security interest in and lien upon all of the Debtor's post-petition assets, including, without limitation, all of the Debtor's Accounts, Books, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Equipment, General Intangibles, Inventory, Investment Property, Negotiable Collateral, Supporting Obligations, Avoidance Actions and Claims (as those terms are defined in the DIP Loan Agreement), money, cash, the proceeds or products of any and all of the foregoing, and to the extent not included in the foregoing, all other personal property of the Debtor of any kind or description, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located, excluding any of Debtor's Accounts in existence on the Petition Date and any collections or proceeds thereof ("Excluded Accounts") (all such personal property, and the proceeds thereof, being collectively hereinafter referred to as the "Collateral").

K. The Debtor has represented to the Lender and the Court that there are no security interests in or liens upon any of the Collateral, except the existing liens held by Laurus Master Fund, Ltd. (the "Existing Secured Lender").

L. The Debtor has certified that a copy of the Motion and notice of the Interim Hearing were served by electronic mail, telecopy transmission, overnight courier, hand delivery or U.S. first-class mail upon (a) all parties who claim interests in or liens upon the Collateral, including the Existing Secured Lender, (b) counsel to the Lender; (c) the United States Trustee; (d) the Debtors' twenty largest creditors; and (e) all other entities filing a written request for notices in this case. The Court finds that notice of the Motion is sufficient for all purposes under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, sections 102(1), 105, 361, 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c).

M. Good cause has been shown for the entry of this Order and authorization for the Debtor to obtain the Post-Petition Financing pursuant to the DIP Loan Agreement and to afford the Lender the adequate protection provided herein. The Debtor has an immediate and critical need to obtain funds in order to continue the operation of the business and to undertake the sale of substantially all of the assets, subject to the approval of this Court, contemplated in the Asset Purchase Agreement, as amended, between the Debtors and Lender. Financing of the type described herein and in the DIP Loan Agreement is necessary to avoid immediate and irreparable harm to the Debtor. Without such funds, the Debtor will not be able to make payroll or pay other direct operating expenses and obtain goods and services needed to carry on the business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estates. The Debtor's ability to finance operations and the availability to the Debtor of sufficient working capital and liquidity through the sale process are vital to the confidence of the Debtor's employees, and the Debtor's vendors and suppliers of goods and services. Entry of this Order will minimize disruption of the Debtor's business and operations as a going concern, will

preserve the assets of the Debtor's estate for the benefit of its creditors, and is in the best interests of Debtor, its creditors and estate. The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

N.    The Lender has objected to the use of the Collateral by the Debtor, except under the terms of the DIP Loan Agreement and this Order.

O.    The DIP Loan Agreement has been negotiated in good faith and at arm's length between the Debtor and the Lender, and the Lender has acted in good faith in agreeing to provide the post-petition financing contemplated by this Order and the DIP Loan Agreement and has relied on this Order in extending such financing. Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Agreement shall be deemed to have been made by the Lender in good faith within the meaning of section 364(e) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED in accordance with this Interim Order.

2.    The Debtor is hereby authorized to execute the DIP Loan Agreement, in substantially the form filed with this Court (together with all exhibits and schedules hereto, the Promissory Note, this Interim Order, the Final Order, any other note executed by Debtor in connection with the DIP Loan Agreement, and any other agreement entered into, now or in the future, by the Debtor in connection with the DIP Loan Agreement) (collectively the "Loan Documents").

3. Upon execution and delivery thereof, the Loan Documents shall constitute valid, binding and enforceable obligations of the Debtor in accordance with their terms. In furtherance of this Order, Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all agreements, instruments and documents (including, without limitation, the execution of promissory notes, security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), to the extent required by the Loan Documents, and to pay all filing and recording fees and privilege taxes, in each case as may be necessary or, in the opinion of Lender, desirable to give effect to any of the terms and conditions of the Loan Documents, to perfect the DIP Liens (as defined below) or as otherwise required or contemplated by the Loan Documents.

4. The Debtor is hereby authorized (i) to obtain the loan in an amount no greater than $130,000 (the "Loan") from Lender (together with all interest and fees payable under the Loan Documents (the "DIP Obligations") and (ii) to incur any and all liabilities and obligations under the Loan Documents, and to pay all interest, fees, expenses and other obligations provided for under the Loan Documents and as set forth in the Budget; and (iii) to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof; provided that, pending the Final Hearing on the Motion (the "Final Hearing"), the Debtor may incur DIP Obligations under the Loan Documents only to the extent necessary to avoid immediate and irreparable harm to the Debtor, which, for purposes hereof, shall include (a) payment of expenses specified in the Budget and the Loan Documents, and (b) for so long as any DIP Obligations are outstanding, payment of DIP Obligations pursuant to this Order or any other order of the Court.

5. In accordance with the DIP Loan Agreement, the Loan shall be advanced on the date this Order is entered, or October 15, 2005, whichever is later, in an amount equal to $130,000, or the amount of priming liens, whichever is less. Notwithstanding the foregoing, Lender shall not be required to make any loan advance after October 28, 2005 or any loan not specifically set forth in the attached Budget.

6. **DIP Priming Liens**. To secure the DIP Obligations, the Lender is hereby granted, effective immediately, valid, perfected, first priority, senior priming security interests in and liens upon all Collateral and all other personal property of the Debtor's estate (subject only to the prior security interest of the Existing Secured Lender in the Blocked Account and in the Debtor's prepetition accounts receivable (to the extent that the Existing Secured Lender's liens are valid, perfected liens) (collectively, the "Permitted Encumbrances") pursuant to sections 364(c) and 364(d)(1) of the Bankruptcy Code, as more fully described in the Loan Documents. All of the security interests and liens referred to above and those granted and conveyed pursuant to the Loan Documents are referred to in this Order as "DIP Priming Liens or "DIP Liens."

7. **DIP Obligations Priority Claim**. All DIP Obligations shall constitute an allowed superpriority claim (the "DIP Super-Priority Claim") pursuant to, section 364 (c)(1) of the Bankruptcy Code, over all other administrative expenses and any other claims or liens in Debtor's case of the kind specified in, or ordered pursuant to, the Bankruptcy Code including, but not limited to, sections 326, 328, 330, 331, 503(b), 506(c) 507(a), 507(b), or 546(c) of the Bankruptcy Code, and at all times shall be senior to the rights of Debtor, any successor trustee, or any creditor in the cases or any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if either of the Debtors' cases is

ATL\64954.2    8    Tectonics Amended DIP Order v.2_1.DOC

converted to a case under Chapter 7 of the Bankruptcy Code. No other claim having a priority superior or *pari passu* to that granted to or on behalf of Lender by this Order shall be granted or approved while any of the DIP Obligations or the commitments under the DIP Loan Agreement remain outstanding.

        8.    **Perfection of DIP Liens.** The DIP Liens shall be perfected upon entry of this Interim Order providing for such perfection without the necessity of filing or obtaining financing statements, mortgages, deeds of trust, control agreements or other documents, or taking any other perfection action.

        9.    As measures of adequate protection of Existing Secured Lender's interest, the following is granted:

        a.    Debtors shall immediately disburse to Existing Secured Lender the amount of $76,345 held by Debtors as proceeds of prepetition accounts;

        b.    Debtors shall segregate the amount of $51,033.74 held by Debtors as proceeds of prepetition accounts in connection with certain prepetition sales tax and expense claims without prejudice to the rights and interests of Existing Secured Lender in such funds;

        c.    Debtors shall within a reasonable period of time after receipt disburse to Existing Secured Lender all collections received on prepetition accounts;

        d.    Existing Secured Lender is granted a replacement lien in all unencumbered assets of Debtors that existed on the Petition Date, if any, and all postpetition assets of the Debtors to the extent of any deterioration in the assets which secured the obligations owing to Existing Secured Lender, provided, however, the replacement lien shall be subordinate to the DIP Priming Liens granted to Lender hereunder;

        e.    The liens of Existing Secured Lender shall attach to the proceeds of any sale of Debtors' assets subject only to the DIP Priming Liens granted to Lender hereunder;

        f.    From the net proceeds of any such sale of all or part of the Debtors' assets in this case, Debtors shall, after repayment of the obligations owing to Lender under the Loan Documents and after payment of other amounts such as amounts owing under contracts and leases to be assumed pursuant to the APA, disburse $750,000 (less the amount of disbursements under subsections (a) and (c) hereunder) to Existing Secured Lender for application to its claim

ATL\64954.2                                         9                              Tectonics Amended DIP Order v.2_1.DOC

without prejudice to the Investigation Rights (as defined hereunder) and shall segregate an additional $150,000 for purposes of assuring payment of fees and expenses, without prejudice to Existing Secured Lender's rights and interests in additional proceeds of the sale for obtaining payment in full of all obligations owing to Existing Secured Lender;

      g.    Debtors, creditors, and any other party-in-interest in this case shall have until November 28, 2005 to: (a) review and investigate the claim and security interest asserted by Existing Secured Lender and claims, defenses, offsets or disputes related thereto, including without limitation, any issues relating to fees and expenses sought by Existing Secured Lender under 506(b); and (b) file any objection, challenge, contested matter or adversary proceeding (whichever is procedurally required to properly assert a position deemed by such party as valid) with regard to any issue relating to Existing Secured Lender ("Investigation Rights").  If no action is timely and properly taken in accordance with the Investigation Rights, then Debtors shall immediately disburse to the Existing Secured Lender amounts necessary to satisfy in full any unpaid amount of the obligations owing to Existing Secured Lender in accordance with the statement of account to Debtors rendered by Existing Secured Lender.  Such statement of account shall detail the charges and interest, including any attorney fees, default interest and other fees and be served upon the Office of the U.S. Trustee and any successor trustee.

      10.    Debtor shall maintain and promptly repair the Collateral as provided for in the DIP Loan Agreement.

      11.    Debtor shall utilize the Loan proceeds solely to fund the types and corresponding amounts of itemized expenditures set forth in the attached Budget during the time periods specified in such Budget.  Specifically, no Loan proceeds shall be used, directly or indirectly, without the prior written consent of Lender: **(i)** to pay any "topping fees," "exit fees," or similar amounts; **(ii)** to make any distribution under a plan of reorganization in these cases; **(iii)** to finance in any way litigation of any type relating to or in connection with the DIP Loan Agreement, the Loan Documents or the Asset Purchase Agreement or agreements or instruments entered into in connection therewith; **(iv)** to finance in any way litigation of any type adverse to the interests of Lender or its rights and remedies under the DIP Loan Agreement, any DIP Order, any other Loan Document or the Asset Purchase Agreement; **(v)** to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental

ATL\64954.2                      10           Tectonics Amended DIP Order v.2_1.DOC

body; **(vi)** to make any payment to any professional person (including without limitation any attorneys' fees incurred by the Debtors) in these cases; or **(vii)** to make any payment on any pre-petition debt or claim.

12. The proceeds of any disposition of, or other realization upon, all or any part of the Collateral, other than the Excluded Accounts (each, a "Collateral Disposition") shall be immediately applied to repay the DIP Obligations in the order of priority as set forth in the DIP Loan Agreement.

13. Lender is granted a continuing security interest in all of the Debtor's right, title, and interest in all currently existing and hereafter acquired or arising Collateral in order to secure prompt payment of any and all of the DIP Obligations in accordance with the terms and conditions of the Loan Documents and in order to secure prompt performance by the Debtor of each of its covenants and duties under the Loan Documents. Lender's liens in and to the Collateral shall attach to all Collateral without further act on the part of Lender or Debtor.

14. Lender (through any of its respective officers, employees, or agents) shall have the right, from time to time hereafter to inspect the Debtor's Books and records and to check, test, and appraise the Collateral or any other collateral securing the DIP Obligations in order to verify the Debtor's financial condition or the amount, quality, value, condition of, or any other matter relating to, the Collateral or any other collateral securing the DIP Obligations. The Debtor shall permit representatives, agents and/or employees of Lender to have complete access to such entity's premises and all of its records during normal business hours and shall cooperate, consult with, and provide to such persons all such information as they may reasonably request.

15. Any reversal or modification on appeal of this Interim Order shall not affect the validity of any debt incurred, security interest or lien granted, or any priority granted pursuant to this Interim Order with respect to funds actually advanced prior to such reversal or modification.

16. Lender may request at any time such further adequate protection of its interest, pursuant to sections 361 and 363 of the Bankruptcy Code, as it reasonably deems necessary.

17. The DIP Loan Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

18. The Notice given of the Motion and the Interim Hearing constitutes good and sufficient notice.

19. No plan of reorganization of the Debtor shall alter or impair any rights of Lender under this Interim Order, the DIP Agreement or any other of Lender's loan documents without Lender's consent.

20. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby lifted and terminated as to Lender to the extent necessary to implement the provisions of this Order and the Loan Documents, thereby permitting Lender, *inter alia*, to receive collections of Collateral for application to the DIP Obligations, as applicable and as provided herein, to file or record any UCC-1 financing statements mortgages, and other instruments and documents evidencing or validating the perfection of the DIP Liens and to enforce the DIP Liens upon default subject to the prior notice provisions of this Order. The relief from the automatic stay

granted herein shall not be subject to the 10-day stay imposed by Rule 4001(a)(3) of the Bankruptcy Rules.

21.     Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of this Order are hereafter modified, vacated or stayed on appeal:

(i)     such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability, or DIP Lien granted or incurred by Debtor to Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any DIP Lien, priority or right authorized or created under the original provisions of this Order or pursuant to the Loan Documents; and

(ii)    any indebtedness, obligation or liability incurred by Debtor to Lender under the Loan Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order and the Loan Documents, and Lender shall be entitled to all the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted herein and pursuant to the Loan Documents, with respect to any such indebtedness, obligation or liability.  All Loans made under the Loan Documents are made in reliance upon this Order, and, therefore, the indebtedness resulting from such Loans prior to the effective date of any stay, modification or vacation of this Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and Superpriority DIP Claim granted to Lender under this Order or the Loan Documents, as a result of any subsequent order in the Chapter 11 cases, or any superseding case, of Debtor.

22. By consenting to this Order, making Loans or administering the financing relationship with Debtor pursuant to the Loan Documents, Lender shall not be deemed to be in control of either Debtor or their operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of Debtors.

23. The provisions of this Order and all transactions, agreements and actions entered into or taken hereunder or pursuant to the Loan Documents shall be binding upon all parties in interest in this chapter 11 case, including, without limitation, Lender, Debtors, their respective successors and assigns (including any chapter 11 trustee hereafter appointed or elected for the estates of Debtors or any chapter 7 trustee appointed in a superseding chapter 7 case), and shall inure to the benefit of Lender, Debtors and their respective successors and assigns. In no event shall Lender have any obligation to make Loans to any chapter 7 or chapter 11 trustee appointed or elected for the estates of Debtors.

24. As set forth above in the Findings, Debtors have represented to Lender that they believe that all of the assets of Debtor Network's subsidiary, Tectonic Solutions, Inc., were transferred to Debtor Network in February 2005 and that there are no remaining assets of Tectonic Solutions, Inc. To the extent it is determined that Tectonic Solutions, Inc. does have any material assets, such assets shall be deemed to be included in the definition of "Collateral" as used herein and in the DIP Loan Agreement, and shall be encumbered with the same liens, interests, rights and encumbrances that encumber the assets of Debtor, as set forth herein.

25. To the extent that any provisions in the Loan Agreement are inconsistent with any of the provisions of this Interim Order, the provisions of this Interim Order shall govern and control; provided, however, that the inclusion of supplemental rights or remedies in favor of the Lender in any of the Loan Documents shall not be deemed a conflict with this Order.

26. **The Final Hearing shall be held at 2:00 p.m., on October 28, 2005**, at the U.S. Bankruptcy Court, Northern District of Georgia, Room 1404, 75 Spring Street, SW, Atlanta, Georgia 30303. If no objection to the Motion or this Order is timely filed and asserted at the Final Hearing, then this Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make at the Final Hearing and that are acceptable to Lender. If any or all of the provisions of this Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then any DIP Obligations incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Order and the Loan Documents, and Lender shall be entitled to the protections afforded under sections 364(e) and 363(m) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the liens granted to Lender in the Collateral and superiority claim status granted herein and pursuant to the Loan Documents with respect to all such DIP Obligations.

27. Promptly after the entry of this Order, Debtors shall mail, by first class mail, a copy of this Order and a notice of the Final Hearing, (a) all parties who claim interests in or liens upon the Assets, including the Existing Secured Lender, (b) counsel to the Lender; (c) the United States Trustee; (d) the Debtors' twenty largest creditors; and (e) all other entities filing a written

request for notices in this case, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing.

28.    If any party in interest shall have an objection to any of the provisions of this Order, such party shall be authorized to assert such objection at the Final Hearing, provided that a written statement setting forth the basis for such objection is filed with the Court (with a copy to Chambers), and concurrently served upon counsel for Debtors, Gregory D. Ellis and William D. Matthews, Lamberth, Cifelli, Stokes and Stout, P.A., 3343 Peachtree Road, N.E., East Tower, Suite 550, Atlanta, Georgia 30326-1022; (ii) the Office of the U.S. Trustee, Room 362, Richard Russell Building, 75 Spring Street, S.W., Atlanta, Georgia 30303; and (iii) counsel for Lender, Neil P. Olack, Esq., Duane Morris LLP, 1180 West Peachtree Street, Suite 700, Atlanta, Georgia 30309, such that such objections and responses are filed **on or before October 27, 2005**. Unless an objecting party shall be and appear at the Final Hearing to assert the basis for such objection before the Court, such objection shall be deemed to have been waived and abandoned by such objecting party.

29.    The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

So Ordered, this 12th day of October 2005.

*/s/ James E. Massey*
JAMES E. MASSEY
U.S. BANKRUPTCY JUDGE

Prepared and Presented by:

LAMBERTH, CIFELLI, STOKES
& STOUT, P.A.
Counsel for Tectonic Network, Inc. and Tectonic Solutions, Inc.
By: /s/ William D. Matthews
    Gregory D. Ellis
    Georgia Bar No.
    gellis@lcsslaw.com
    William D. Matthews
    Georgia Bar No. 470865
    bmatthews@lcsslaw.com
3343 Peachtree Road, N.E.
East Tower, Suite 550
Atlanta, Georgia 30326-1022
Phone: (404) 262-7373
Fax: (404) 262-9911

Tectonic Network, Inc.  
Weekly Budget

Schedule A  
Initial Budget

| Week Beginning | Week 1 10/3/05 | Week 2 10/10/05 | Week 3 10/17/05 |
|---|---|---|---|
| **Receipt on Receivables (Held for the benefit of Secured Creditor)** | $ - | $ - | $ - |
| **Expenses** | | | |
| Payroll including payroll taxes and ADP fees | $ - | $ 70,000 | $ - |
| Health Benefits - Blue Cross-Blue Shield | $ - | $ - | $ - |
| Rent Expense - HQ - Atlanta | $ - | $ - | $ - |
| Rent Expense - Zoom Eyeworks, Berkeley CA | $ 900 | $ - | $ - |
| Rent Expense - HQ - Englewood, CO | $ - | $ - | $ - |
| Englewood, CO - Move/Storage Costs | $ 2,650 | $ - | $ - |
| Utilities, Atlanta, Berkeley, Englewood | $ - | $ - | $ - |
| Telephone and Utility Deposits | $ - | $ - | $ - |
| Telephone, Atlanta, Berkeley, Englewood incl. cellphones/landline | $ 350 | $ 500 | $ - |
| Fedex, Postage and Shipping | $ 350 | $ 350 | $ 350 |
| Intercall - conference call and sales presentation line | $ 1,000 | $ - | $ - |
| Bank Fees | $ - | $ 500 | $ - |
| Travel - Employee Expense Reports | $ 6,000 | $ 6,000 | $ 6,000 |
| Pre-Petition Employee Expense Reports | $ - | $ - | $ - |
| Data 393 Holdings, LLC - server hosting | $ 2,400 | $ - | $ - |
| Rackspace Managed Hosting - server hosting | $ 1,000 | $ - | $ - |
| DTC Group - Tech support | $ - | $ 1,200 | $ 1,000 |
| Email Server - move out of Englewood Facility to managed host | $ - | $ - | $ - |
| Trade Show Booth Reservation (AIA and Autodesk) | $ - | $ - | $ - |
| Wells Fargo and DeLange Landen - Copier Rental | $ - | $ - | $ - |
| Office Depot - Office Supplies | $ - | $ - | $ - |
| Diad Software - Billing System | $ - | $ 1,000 | $ - |
| Workers Compensation and General Liability Insurance | $ - | $ - | $ - |
| Press Releases/Filings | $ - | $ - | $ - |
| Miscellaneous | $ 1,000 | $ 1,000 | $ 1,000 |
| **Consultant Use:** | | | |
| Virtual Product Production - Sreenath Vemulapalli | $ 1,800 | $ 1,800 | $ 1,800 |
| Virtual Product Production - Jeff McGrew | $ 1,000 | $ 1,000 | $ 1,000 |
| Studio Production - Nina Flack | $ 1,600 | $ 1,600 | $ 1,600 |
| Studio Production - Data Load | $ - | $ 1,800 | $ 1,800 |
| E-Newsletter - Roger Grant | $ - | $ - | $ - |
| Studio Production - Kendall Loyd Consulting | $ - | $ 1,000 | $ - |
| Contract Labor/Additional Payroll | $ 1,000 | $ 1,000 | $ 1,000 |
| Pre-Petition Production Technicians/Programmers | $ - | $ - | $ - |
| United States Trustee Quarterly Fees | $ - | $ - | $ 5,000 |
| **Professional Services:** | | | |
| Lamberth, Cifelli, Stokes and Stout - Bankruptcy Counsel | $ - | $ - | $ - |
| Paul,Hastings, Janofsky and Walker - General Counsel | $ - | $ - | $ - |
| **Weekly Total** | $ 20,700 | $ 88,750 | $ 20,550 |
| **Cumulative** | $ 20,700 | $ 109,450 | $ 130,000 |