ENTERED ON DOCKET
OCT 2 8 2005

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| TECTONIC NETWORK, INC., f/k/a | : | CASE NO. 05-78966 and 05-78955 |
| RETURN ON INVESTMENT CORP., | : | Jointly Administered |
| f/k/a NET TECH INTERNATIONAL, | : | |
| INC., and TECTONIC SOLUTIONS, INC. | : | Judge Massey |
| | : | |
| Debtors. | : | |

---------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | : | |
| TECTONIC NETWORK, INC., and | : | |
| TECTONIC SOLUTIONS, INC. | : | |
| | : | |
| Movants, | : | |
| | : | CONTESTED MATTER |
| v. | : | |
| | : | |
| LAURUS MASTER FUND, LTD., | : | |
| | : | |
| Respondents. | : | |
| | : | |

ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 365, and
1146(c) (A) AUTHORIZING THE DEBTORS' SALE TO TECTONIC, INC. OF
SUBSTANTIALLY ALL OF THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C)
AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES

Upon the amended motion (the "Motion") of Tectonic Network, Inc. and Tectonic

Solutions, Inc., debtors and debtors-in-possession herein (collectively, "Debtors" or "Seller"),

pursuant to 11 U.S.C. §§ 105, 362, 363, 365, and 1146(c) and Rules 2002, 6004, 6006 and 9014

of the Federal Rules of Bankruptcy Procedure, for an order (the "Sale Order") (1) authorizing the

Debtors' sale of substantially all of their assets (the "Assets") to Tectonic, Inc. as designee of

Boston Equities Corporation[1] ("Buyer"), free and clear of liens, claims and encumbrances, pursuant to the terms and conditions of the Asset Purchase Agreement, as amended by Amendment Nos. 1 and 2 (as amended, the "APA"), (3) authorizing assumption and assignment of certain executory contracts and unexpired leases, particularly identified and listed on the Exhibit C included in Amendment No. 1 to the APA and attached hereto as Exhibit 1 (the "Assumed Contracts"); and (4) authorizing rejection of any and all agreements not listed on Exhibit 1 hereto (the "Rejected Contracts"); and

Upon this Court's prior order, dated October 12, 2005 (the "Preliminary Order"), scheduling a Sale Hearing (defined below) with respect to the sale of the Assets, prescribing the form and manner of notice thereof, and approving certain auction procedures, as amended, including the terms and conditions of sale and bidding for the Assets (the "Auction Procedures"); and

Due notice of the proposed sale, the Preliminary Order, the Sale Hearing, and the assumption and assignment of the Assumed Contracts and the rejection of the Rejected Contracts having been given to all parties entitled thereto under the Preliminary Order, as evidenced by certificates of service previously filed with this Court; and

A hearing having been held before this Court on October 28, 2005 to consider the sale of the Assets, the submission of any and all competing Qualified Bids, the assumption and assignment of the Assumed Contracts, and the rejection of the Rejected Contracts (the "Sale Hearing"), at which time all parties in interest were afforded an opportunity to be heard; and the Court having heard testimony and received evidence in support of approval of the sale of the Assets, the assumption and assignment of the Assumed Contracts, and the rejection of the Rejected Contracts;

NOW, THEREFORE, based upon the Court's review of the evidence proffered or adduced, objections, if any, filed in connection with, and arguments of counsel made at, the Sale Hearing; and upon the entire record of the Sale Hearing and this case; and after due deliberation thereon; and

---

[1]  Tectonic, Inc. is the designee of Boston Equities Corporation pursuant to Amendment No. 2 to the APA (defined herein).

good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.    Terms not otherwise defined herein have the same meanings ascribed to them in the Motion and APA.

C.    Venue of this case in this district is proper pursuant to 28 U.S.C. § 1409(a).

D.    Determination of the Motion is a core proceeding under 28 U.S.C. §§ 157 (b) (2) (A) and (N). The statutory predicates for the relief requested herein are sections 105, 362, 363, 365 and 1146(c) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. as amended (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, and 9014.

E.    Proper, timely, adequate and sufficient notice of the Motion, the Auction Procedures, the Sale Hearing and the sale of the Assets has been provided in accordance with section 102 (1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014 and the Preliminary Order, and no other or further notice of the Motion, the Auction Procedures, the Sale Hearing or the entry of this Sale Order is required.

F.    The Preliminary Order has become a final and nonappealable Order.

G.    A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including (a) all parties who claim interests in or liens upon the Assets, including Laurus Master Fund, Ltd. ("Laurus"), (b) all parties

---

[2]Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

4

to the Assumed Contracts to be assumed and assigned to the Buyer, (c) all known parties to the Rejected Contracts to be rejected by the Debtors, (d) counsel to the Buyer; (e) all parties which Debtors' management has identified as potential interested bidders for the Assets and all parties who have submitted a bid for the Assets; (f) the United States Trustee; (g) the Debtors' twenty largest creditors; and (h) all other entities filing a written request for notices in this case.

   H. Through marketing efforts and a competitive sale process, including seeking offers for the Assets through notice of the Motion, and pursuant to the Auction Procedures set forth in the Preliminary Order, the Debtors and their professionals afforded interested potential purchasers a full, fair, and reasonable opportunity to make an offer to purchase the Assets.

   I. Debtors and their professionals complied with the Preliminary Order.  The Debtors did not receive any bids for all or any portion of the Assets other than Buyer's bid.  As a result, the Debtors did not proceed with the Auction previously scheduled for October 28, 2005. Accordingly, Buyer has submitted the highest and best bid for the Assets.

   J. It is uncontroverted that (a) the Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of the Debtors, and (b) the Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the APA and (c) no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate such transactions.

   K. The sale of the Assets including, without limitation the assumption and assignment of the Assigned Contracts, reflects the exercise of the Debtors' sound business judgment.  The sale of the Assets is further justified by the compelling circumstances described in the Motion.

5

L.      The APA must be approved and consummated promptly in order to preserve the viability of the Debtors' business as a going concern.  Approval and consummation of the APA at this time are in the best interests of the Debtors, their creditors and estates.  The Court finds that the Debtors have articulated good and sufficient business justification for the sale of the Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization, for the assumption and assignment of the Assumed Contracts and rejection of the Rejected Contracts pursuant to section 365 of the Bankruptcy Code, in that, among other things:

i.      In the absence of a prompt sale of the Assets, their value will steadily decline because the Debtors lack sufficient cash to continue business operations;

ii.     A sale pursuant to section 363(b) is likely to produce a greater return to creditors in the Debtors' case than if the Assets were sold in connection with a liquidating plan of reorganization, because the unavoidable delay and expense required to confirm such a plan would deprive the Debtors' estates of the opportunity to realize the maximum value of the Assets available through an immediate sale;

iii.    Each of the Assumed Contracts and each of the Rejected Contracts are executory contracts or unexpired leases within the meaning of section 365(a) of the Bankruptcy Code;

iv.     Claims against the Debtors' estates will be minimized as a result of the prompt consummation of a sale of the Assets, and the concomitant assumption and assignment of the Assumed Contracts to the Buyer, and the rejection of the Rejected Contracts;

v.      A sale to the Buyer of the Assets at this time will result in the highest possible sale price; and

6

vi.    Unless a sale to the Buyer is concluded expeditiously as provided for in the Motion and under the APA, (a) the value of the Assets will decline precipitously and (b) the Debtors, their estates and creditors may realize substantially less value for the Assets.

M.    The terms and conditions of the APA and the Purchase Price are fair and reasonable, constituting reasonably equivalent and fair market value under the Bankruptcy Code and applicable nonbankruptcy law.

N.    The cure amounts in respect of the Assumed Contracts, listed in Exhibit 1 hereto, as determined by the Court (the "Cure Amounts"), are the sole amounts necessary to cure all defaults and to pay all actual or pecuniary losses that have resulted from such defaults under the Assumed Contracts. The Cure Amounts are part of and not in addition to the Purchase Price, and such amounts are to be paid from the sale proceeds.

O.    The Buyer has provided adequate assurance of Buyer's future performance under the Assumed Contracts (to be assigned to such Buyer) within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

P.    The assumption and assignment of the Assumed Contracts pursuant to the APA, and the rejection of the Rejected Contracts, is in the best interest of the Debtors, their creditors and estates.

Q.    The APA was negotiated, proposed and entered into by the parties without collusion, in good faith, and from arm's length bargaining positions. The Buyer is a good faith Buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

7

R.    In the absence of a stay pending appeal, the Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the APA, including without limitation the (a) assumption and assignment of the Assumed Contracts and (b) rejection of the Rejected Contracts, at any time after the entry of this Sale Order.

S.    The transfer of the Assets and the assignment of the Assumed Contracts pursuant to the APA (a) are or will be legal, valid and effective transfers of property of the Debtors' estates to the Buyer, and (b) vest or will vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all liens, claims, interests, and encumbrances under section 363(f) of the Bankruptcy Code (collectively, "Claims").

T.    All amounts, if any, to be paid by the Debtors pursuant to the APA constitute administrative expenses under sections 503(b) and 507(a)(1) of the Bankruptcy Code and are immediately payable if and when the Debtors' obligations arise under the APA without further order of the Court.

U.    The transfers of the Assets, the assignments of the Assumed Contracts and the rejection of the Rejected Contracts do not and will not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person (other than the Buyer's obligation to pay Cure Amounts as part of the Purchase Price and from the sale proceeds) by reason of such transfers and assignments under nonbankruptcy law.

V.    All of the provisions of this Sale Order and the APA are nonseverable and mutually dependent.

8

W.      Buyer intends to use the name "Tectonic" in the operation of the Business, and
therefore, Buyer requests that the Court compel each of the Debtors to change its name.

X.      Time is of the essence in closing the sale, and the Debtors and Buyer intend to close
the sale and other transactions as soon as possible.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted, as further described herein.

2.      All objections, if any, to the Motion or the relief requested therein that have not been
withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the
merits.

3.      The APA is approved in its entirety, including (a) Amendment No. 1 amending the
Purchase Price, Termination provision and other aspects to the APA; and (b) Amendment No. 2
designating the Buyer as Tectonic, Inc., amending the Assignment provision, further amending the
Purchase Price, amending the Closing Date, replacing the list of Seller Contracts to be assumed
(attached as Exhibit 1 hereto), and amending other aspects to the APA.

4.      The terms and conditions and transactions contemplated by the APA are hereby
approved in all respects, and the sale of the Assets pursuant to the APA is hereby authorized and
directed under section 363(b) of the Bankruptcy Code.

5.      Buyer has submitted the highest and best bid for the Assets.

9

6.      Pursuant to sections 363(b) and 365 of the Bankruptcy Code, the Debtors are hereby authorized, directed and empowered to fully assume, perform under, consummate and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA.

7.      The letter attached hereto as Exhibit 2 (the "Direction Letter") is approved, and the Buyer is authorized to make the disbursements and other payments set forth in the Direction Letter.

8.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Buyer and upon the closing under the APA shall be free and clear of all Claims.

9.      Each of the Debtors is authorized and directed to take any and all actions necessary to officially change its name to a name that does not include "Tectonic" or a similar name, provided that the Debtors may, where necessary, state that it was formerly known as "Tectonic."

10.     Except as expressly permitted by the APA, all persons and entities holding Claims of any kind and nature with respect to the Assets hereby are barred from asserting such Claims of any kind and nature against the Buyer, its successors or assigns, or the Assets.

11.     Except as expressly provided in the APA, the Buyer is not assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors or any liabilities, debts or obligations in any way whatsoever relating to or arising from the Assets or the Debtors' operation or use of the Assets.

12.     No person or entity, including without limitation, any federal, state or local governmental agency, department or instrumentality, shall assert against the Buyer or its successors

10

in interest any liability, debt or obligation relating to or arising from the Assets or the Debtors'

operation or use of the Assets, including, without limitation, the Assumed Contracts or the Rejected

Contracts or any liabilities calculable by reference to the Debtors or their Assets or operations, and

all persons and entities are hereby enjoined from asserting any such liabilities, debts or obligations

against the Buyer.

13.    The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy

Code, and subject to the terms of the APA, to (a) assume and assign to the Buyer each of the

Assumed Contracts identified on Exhibit 1 hereto pursuant to the provisions of section 365 of the

Bankruptcy Code, in each case free and clear of all Claims, and (b) execute and deliver to the Buyer

such documents or other instruments as may be necessary to assign and transfer such Assumed

Contracts to the Buyer, and (c) reject the Rejected Contracts. The Debtors' assumption and

assignment is expressly conditioned on the Buyer's further consent. If the Buyer does not elect to

have any such contract assumed, it shall not be assumed or deemed to have been assumed by the

Debtors.

14.    Subject to the terms of the APA, the Buyer is hereby authorized, empowered and

directed at the Closing to pay as part of the Purchase Price the Cure Amount for any of the Assumed

Contracts being assigned to such Buyer, by paying upon Closing to the persons identified on Exhibit

1 hereto the Cure Amounts stated therein, to the extent that any such Assumed Contract is assumed

and assigned to Buyer in accordance with the APA governing such assignments.

15.    The Assumed Contracts listed on Exhibit 1 hereto shall, upon assignment to the

Buyer, be deemed to be valid and binding and in full force and effect and enforceable in accordance

11

with their terms, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Assumed Contracts after such assignment.

16.    Each nondebtor party to an Assumed Contract listed on Exhibit 1 hereto is hereby barred from asserting against the Debtors or the Buyer any default existing as of the date of the Sale Hearing if such default was not raised or asserted in response to the Motion or Notice.

17.    On and after the date of the Buyer's payment to the Debtors of the Purchase Price as required by the APA (the "Closing Date"), each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims, if any, against the Assets, as such Claims may have been recorded or may otherwise exist.

18.    If any person or entity that has filed financing statements or other documents or agreements evidencing Claims against or other interests in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, released of all Claims or other interests which the person or entity has with respect to the Assets, the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents an behalf of the person or entity with respect to the Assets.

19.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of said Assets to the Buyer on the Closing Date.

12

20.    Each and every federal, state, and local governmental agency or department hereby is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

21.    As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the APA, including without limitation the transfer of the Assets to the Buyer.

22.    The Closing under the APA shall take place no later than November 8, 2005 (the "Closing Date").  Buyer shall pay to Debtors a nonrefundable initial payment of $250,000 (the "Initial Payment") by wire transfer within one business day of the entry of this Order.  Of the Initial Payment, $150,000 Debtors may pay payroll and current operating expenses pursuant to the Projected Cash Budget, attached hereto as Exhibit 3.  Debtors shall pay the balance of $100,000 to
_insert below_
Laurus as adequate protection.

23.    On the Closing Date, as additional adequate protection for the use of funds by the Debtors as set forth in the Direction Letter, Debtors' counsel shall hold all remaining proceeds of the sale (the "Purchase Price Balance"), with all remaining liens of Laurus to attach to the Purchase Price Balance without prejudice to the right of Debtors to seek the use of such funds (except for the $150,000 Expense Reserve set forth in Paragraph 24(b), below) subject to notice and hearing and all requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.



Insert for application to Laurus's asserted claim without prejudice to the Investigation Rights (as defined in the Interim Financing Order entered on 10/14/05 ("Financing Order"))

On the Closing Date, the Debtor shall further disburse funds to Laurus in compliance with the terms of the Financing Order and pursuant to the Direction Letter.

24. As additional adequate protection, out of the Purchase Price Balance, Debtors shall:

a. continue to segregate funds in the amount of $35,521.32 representing outstanding checks for sales tax liabilities, without prejudice to the Debtors' right to file a motion with the Court to pay such taxes, subject to all defenses of Laurus to any such motion;

b. Debtors' counsel shall segregate from the proceeds of the sale of the Assets the sum of $150,000.00 (the "Expense Reserve") which shall be held in a separate segregated interest bearing account. These funds shall not be subject to any cash collateral or other use by the Debtors until such time as Laurus has been indefeasibly paid in full; and

c. Debtors shall grant Laurus a replacement lien on all unencumbered assets of Debtors that existed on the Petition Date, if any, and all postpetition assets of the Debtors to the extent of any deterioration in the assets which secured the obligations owing to Laurus.

25. Any such liens and adequate protection hereunder shall be subject to the Debtors' Investigation Rights (as defined in the October 12, 2005 Interim Order) and shall be only to the extent of Laurus's allowed secured claim, including, without limitation, any costs, expenses, and charges allowable under section 506(b) of the Bankruptcy Code.

26. This Court retains jurisdiction (a) to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, (b) to compel delivery of the Assets to the Buyer, (c) to compel delivery of the Purchase Price, (d) to resolve any disputes arising under or related to the

14

APA, except as otherwise provided therein, and (e) to interpret, implement and enforce the provisions of this Sale Order.

27.    Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan of reorganization (or liquidation) shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

28.    The Buyer is a Buyer in good faith of the Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

29.    In the absence of a stay pending appeal, if the Buyer elects or is required to close under the APA at any time after entry of this Sale Order, then, with respect to the APA, and the assumption and assignment of the Assumed Contracts, the Buyer shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Sale Order or any authorization contained herein is reversed or modified on appeal.

30.    The terms and provisions of the APA, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and creditors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties including but not limited to all nondebtor parties to the Assumed Contracts listed on Exhibit 1 hereto to be assigned to the Buyer pursuant to the APA and persons asserting a claim against or interest in the Debtors' estates or any of the Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee for the Debtors under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

15

31.     The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the efficiency of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

32.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

33.     The transfer of the Assets to the Buyer is not subject to taxation under any state or local law imposing a stamp, transfer or similar tax in accordance with section 1146(c) of the Bankruptcy Code.

34.     The stay of orders authorizing the (a) use, sale, or lease of property as provided for in Bankruptcy Rule 6004(g) and (b) assignment of an executory contract or unexpired lease as provided for in Bankruptcy Rule 6006(d) shall not apply to this Sale Order, and the Sale Order is immediately effective and enforceable.

35.     As provided by Bankruptcy Rule 7062, this Sale Order shall be effective and enforceable immediately upon entry. Timing is of the essence in closing the sale and the transactions contemplated in the APA. Therefore, any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

16

36.    Nothing in this Sale Order or the APA shall impair in any manner the rights, claims, liens or priority status of the Buyer under the DIP Loan Agreement and the prior Order(s) of this Court approving the same.

37.    Except as expressly provided in the APA, the transfer of the Assets, the assignment of the Assumed Contracts listed on Exhibit 1 hereto and the rejection of the Rejected Contracts do not and shall not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person (other than the obligation to pay Cure Amounts) by reason of such transfer, assignment and delivery under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.

17

38.    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby

lifted and terminated as to Buyer to the extent necessary to implement the provisions of this Sale

Order and the APA and all transactions contemplated therein.

So Ordered, this **28** day of October 2005.

_James E. Massey_

JAMES E. MASSEY
UNITED STATES BANKRUPTCY JUDGE

Prepared and Presented by:

LAMBERTH, CIFELLI, STOKES
& STOUT, P.A.
Counsel for Tectonic Network, Inc. and Tectonic Solutions, Inc.
By: /s/ William D. Matthews
    Gregory D. Ellis
    Georgia Bar No.
    gellis@lcsslaw.com
    William D. Matthews
    Georgia Bar No. 470865
    bmatthews@lcsslaw.com
3343 Peachtree Road, N.E.
East Tower, Suite 550
Atlanta, Georgia 30326-1022
Phone: (404) 262-7373
Fax: (404) 262-9911

ATL\65510.1

18

**EXHIBIT 1**

## SELLER CONTRACTS

1.      All sales agreements, contracts and invoices.

2.      Bronto Mail, Inc. – month to month contract dated February 19, 2003, for email distribution service – e-newsletter in the amount of $2,220 per quarter.

3.      The Rogers Company – amounts owed for storage and construction on the Trade Show booth in the amount of $14,202.84

4.      Next Step CAD – amounts owed for CAD modeling services in the amount of $3,150.00

5.      Roger Grant – amounts owed for e-newsletter consulting services in the amount of $1,350.00

**EXHIBIT 2**

# LETTER AGREEMENT

October 28, 2005

[DUANE MORRIS]

Re:      [BANKRUPTCY CASES] (collectively, the "Bankruptcy Cases").

Ladies and Gentlemen::

Reference is made to the following Order entered in the Bankruptcy Cases: ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) 362,363.365, AND 1146(c) (A) AUTHORIZING THE DEBTORS' SALE TO TECTONIC , INC. OF SUBSTANTIALLY ALL OF THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES (the "Sale Order").

Pursuant to the Sale Order, Boston Equities Corporation, through its designee Tectonic, Inc. (the Buyer") purchased assets of debtors in the Bankruptcy Cases ("Sellers") in a transaction closing on or before November 8, 2005 (the "Sale"). The terms of the Sale are governed by the Sale Order, which Order modifies and incorporates that certain Asset Purchases Agreement dated as of October 3, 2005 between the Sellers and Boston Equities Corporation; as amended by that certain Amendment No. 1 to Asset Purchase Agreement dated as of October 12, 2005 and by that certain Amendment No. 2 to Asset Purchase Agreement date as of October 28, 2005 (as amended the "APA"). The terms of the Sale as set forth in the APA, and as modified by, and incorporated into, the Sale Order, are herein referred to as the "Sale Terms".

At closing, Buyer and Sellers (collectively, the "Parties") will execute a "Memorandum of Closing" (the "Closing Memorandum"). As set forth in the Closing Memorandum, the payment in the amount of $1,100,000 plus accrued operating expenses under the terms of the APA (the "Purchase Funds") will be provided to the law firm Duane Morris LLP.

Pursuant to the Sale Terms, Buyer shall return the Promissory Note marked "Paid in Full" to satisfy the obligation under the Senior Secured Super Priority Debtor-in-Possession Loan and Security Agreement dated as of October 3, 2005, as provided for in the APA. As confirmed by execution of this Letter Agreement, the Parties have agreed that Duane Morris LLP is authorized and directed to pay from the Purchase Funds to Laurus Master Funds, Ltd an amount equal to $750,000 less any payment received by Laurus from the Sellers post petition, and the balance of the Purchase Funds shall be paid to the account of Lamberth Cifelli to hold on behalf of Sellers and to be distributed in accordance with the Sale Order.

**SELLERS:**

**BUYER:**

**EXHIBIT 3**

**Tectonic Network, Inc.**
**Projected Cash Budget through closing**

**Tectonic Network, Inc.**
**Post Petition Budget**

| Expenses | DIP Budget | Accrued Budget through Oct-05 | 11/1/2005 to 11/6/2005 | 11/7/2005 to 11/11/2005 | Total |
|---|---|---|---|---|---|
| Payroll Mid-Month 10-15-05 | $ 70,000.00 | $ - | $ - | $ | $ 70,000.00 |
| Payroll Month End 10-31-05 | $ - | $ 93,076.05 | $ - | $ | $ 93,076.05 |
| Payroll - Acol Wolford 10/15/05 Deferred Payroll | | | $ - | | |
| Payroll - Sherwin Krug 10/15/05 Deferred Payroll | | | $ - | | |
| Healthcare Benefits | | | $ 13,000.00 | | $ 13,000.00 |
| Insurance - Property/Casualty | | | $ - | | |
| ADP Fees - Final Payroll Tax Return Filings incl. w-2's | | | $ - | | |
| Storage of Records | | | $ - | | |
| Bankruptcy notice expenses | | | $ - | | |
| Shipping, Postage and Mailing | $ 1,050.00 | $ 1,000.00 | $ 200.00 | $ 200.00 | $ 2,450.00 |
| Telephone and Fax | $ 1,500.00 | $ 1,500.00 | $ 500.00 | $ - | $ 3,500.00 |
| Bank Fees | $ 500.00 | $ - | $ 2,250.00 | $ 100.00 | $ 2,850.00 |
| Expense Reports | $ 18,000.00 | $ 6,500.00 | $ 5,000.00 | $ 2,000.00 | $ 31,500.00 |
| Office Supplies | $ - | $ - | $ 250.00 | $ 250.00 | $ 1,000.00 |
| Rent | $ 3,550.00 | $ - | $ 9,000.00 | $ - | $ 12,550.00 |
| Utilities | | | | | |
| Photo Copying | | | | | |
| SEC Filings | $ - | $ - | $ 500.00 | $ - | $ 500.00 |
| Data Hosting and IT | $ 6,500.00 | $ 4,000.00 | $ 2,000.00 | $ 1,273.95 | $ 13,773.95 |
| Miscellaneous | $ 3,000.00 | $ 3,000.00 | $ 2,000.00 | $ - | $ 8,000.00 |
| External Consultants | $ 20,800.00 | $ 10,000.00 | $ 5,000.00 | $ - | $ 35,800.00 |
| **Employee/Consultants** | | | | | |
| Sherwin Krug - CFO Consultant ($55/hour) | | | | | |
| Monica Williamson - Controller Consultant ($50/hour) | | | | | |
| Arol Wolford - CEO Consultant ($105/hour) | | | | | |
| United States Trustee Quarterly Fees | $ 5,000.00 | | | | $ 5,000.00 |
| **Professional Services:** | | | | | |
| Lamberth, Cifelli, Stokes and Stout - Bankruptcy Counsel   Retainer - LCSS | | | | | |
| Paul,Hastings, Janofsky and Walker - General Counsel   Retainer- PHJW | | | | | |
| Babush, Neiman, Konman and Johnson - Accountants (401K and Taxes)   Retainer - BNKJ | | | | | |
| **Total Expenses** | $ 130,000.00 | $ 119,076.05 | $ 26,700.00 | $ 4,223.95 | $ 280,000.00 |